Bill MOSLEY, dba Mosley Office Machines Company, Appellant,

v.

DALLAS ENTERTAINMENT COMPANY, INC., Appellee.

No. 710.

Court of Civil Appeals of Texas, Tyler.

May 10, 1973.

Rehearing Denied June 21, 1973.

John Emmett, Dallas, for appellant.

Rex R. Henger, Bergman & Hicks, Dallas, for appellee.

MOORE, Justice.

Appellee, Dallas Entertainment Company, Inc., sued appellant, Bill Mosley, for conversion of a cash register alleging that appellee was a secured party under a security agreement covering the cash register and that appellant, Mosley, had purchased the cash register from the appellee's debtor without its consent and had sold same to a third party. The trial court, sitting without a jury, granted judgment against appellant, Bill Mosley, in the amount of $950.00, from which judgment appellant duly perfected this appeal.

The record is before us by way of a statement of facts only, no findings of fact and conclusions of law having been requested or filed.

The evidence shows that in June, 1970, appellee, Dallas Entertainment Company, Inc., was the holding company for a private club located in Dallas and known as the Music Box. Appellee sold the entire club to Follies Buffet of Dallas, Inc. Among the various items of personal property allegedly sold with the club was a certain cash register. In connection with the sale of the club, a financing statement was prepared showing Dallas Entertainment Company as the secured party and Follies Buffet of Dallas, Inc., as debtor. The financing statement was filed in the office of the Texas Secretary of State on July 2, 1970. It recited, in part, as follows:

"5. This Financing Statement covers the following types (or items) of collateral. * * * All inventory, equipment, furniture, fixtures, machines, soft goods, plates, silver, pots and pans now owned or hereafter acquired, used with or obtained in connection with the operation of a private club, restaurant, lounge, bar or the like at 2538 Cedar Springs Avenue, Dallas, Dallas County, Texas, together with all goods, chattels and property described in or referred to in the Security Agreement of even date herewith."

The cash register in question is not specifically mentioned or described in the financing statement and the Security Agreement referred to therein was not offered in evidence.

Appellant, Bill Mosley, was in the business of buying and selling used cash registers and does not dispute the fact that he purchased the cash register from Follies Buffet in December, 1970, and that he subsequently sold the cash register to a customer in the course of his business. It is not contended that appellant had actual knowledge of appellee's alleged security interests in the cash register.

The Uniform Commercial Code as adopted in the State by Section 9.203(a) of Texas Business and Commerce Code, Vernon's Ann.Tex. Statutes,[1] provides that subject to certain exceptions not applicable here, "* * * a security interest is not enforceable against the debtor or third parties unless

"(2) the debtor has signed a security agreement which contains a description of the collateral * * *."

By his first four points appellant attacks the judgment on the ground that there is no evidence or alternatively that the evidence is insufficient to show appellee was a secured party under a Security Agreement executed by the debtor because appellee failed to produce a written security agreement. Appellee does not deny that it was required to prove that it had a written security agreement signed by the debtor describing the cash register and that no such security agreement was introduced in evidence. In reply appellee contends first that there is competent oral testimony to prove the existence of a security agreement and secondly that the financing statement itself amounts to a security agreement.

The only evidence of a security agreement is to be found in the oral testimony of Peggy Foley, appellee's president. When viewed in a light most favorable to the judgment her testimony shows that Dallas Entertainment Company received a note and a security agreement at the time the Music Box was sold to Follies Buffet which was signed by a Dr. Cullen. During the course of her testimony she identified an instrument as the security agreement but when the instrument was offered in evidence counsel for appellant objected on the ground the instrument was not signed. The court sustained the objection and the instrument does not appear in the record. Upon being asked whether she had "an independent recollection that Dallas Entertainment Company, Inc. obtained a security interest in a cash register," she replied "Yes, I do." She was not asked nor did she testify that the cash register involved in this suit was described in the security agreement.

The first question for our determination is whether the judgment of the trial court can be sustained on the theory a security agreement may be established by parol evidence.

We have been unable to find any Texas case interpreting the applicable provisions of the Uniform Commercial Code and therefore must make our own interpretation of the statute aided by authorities from other jurisdictions having similar statutes.

A "security interest" in personal property means an interest which secures payment or performance of an obligation. Sec. 1.201(37). "Security Agreement" is defined in Section 9.105(a)(8) as being the bargain of the parties in fact. The requirement that there must be an agreement, not only in connection with Sec. 1.201(3), but also in connection with Sec. 9.203(a)(2) which requires that security agreements be written.

In paragraph 5 of the Uniform Commercial Code Comment following Section 9.203, supra, we find this statement:

"The formal requisites stated in this Section are not only conditions to the enforceability of a security interest against third parties. They are in the nature of

1. All references herein are to Vernon's Annotated Texas Statutes.

a Statute of Frauds. Unless the secured party is in possession of the collateral, his security interest, absent a writing which satisfies subsection (1)(b) (In Texas the corresponding subsection is subsections (a)(2).) is not enforceable even against the debtor, and cannot be made so on any theory of equitable mortgage or the like. * * *"

In American Card Company, Inc. v. H. M. H. Co., 196 A.2d 150 (R.I.Sup.Ct., 1966), the court specifically rejected the argument that the security agreement could be established by parol, stating that oral assertions were without probative force to supply the absence of a required security agreement in writing.

One text writer interprets the foregoing provisions of the code to mean that where an oral security agreement is relied on, the alleged security interest of the secured creditor is invalid as against third persons. Anderson, Uniform Commercial Code, 2nd Ed. Vol. 4, sec. 9–203:11, p. 164.

█ Since the foregoing statute requires the secured party to show that the debtor has signed a security agreement containing a description of the collateral, we hold that the oral testimony of the secured party is without probative force to establish a security interest for the simple reason that it fails to satisfy the statutory requirement that the security agreement be in writing and signed by the debtor.

This brings us to the question of whether the judgment may be sustained on the theory that the financing statement amounts to a security agreement. The financing statement in this case appears to have been written on the Secretary of State's standard form. As noted above, it recites a general description of the collateral in which a security interest is claimed.

It is signed by the creditor, appellee, and by a party alleged to be the agent of Follies, though the character of that signature was never established in the trial of this case. Nowhere in the instrument does it grant the creditor a security interest in the collateral nor does it identify the obligation owed to the creditor.

█ The code makes no provision for a naked financing statement to be enforced as a security agreement. It merely gives notice of the existence of a security interest but in itself does not create a security interest. Anderson, Uniform Commercial Code, 2d Ed. sec. 9–402:4. A financing statement cannot serve as a security agreement where it does not grant the creditor an interest in the collateral and does not identify the obligation owed to the creditor. General Electric Credit Corp. v. Bankers Commercial Corp., 244 Ark. 984, 429 S.W.2d 60 (1968); American Card Company v. H. M. H. Co., supra; Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland, 380 F.2d 355 (4th Cir. 1967); M. Rutkin Electric Supply Company, Inc. v. Burdette Electric, Inc., 98 N.J.Super. 378, 237 A.2d 500 (1967); In Re Mann, 318 F.Supp. 32 (D. C.1970). Since the financing statement offered by appellee fails to contain any language showing the alleged debtor granted the creditor (appellee) an interest in the collateral and since appellee was unable to produce a written security agreement signed by appellant, appellee failed to establish a cause of action. It therefore follows that the judgment must be reversed and rendered in favor of appellant.

In view of the disposition we have made, we do not reach appellant's remaining points of error.

Reversed and rendered.