**UNITED STATES of America, Plaintiff,**

v.

**Gale E. GREENSTREET, LuAnn Taylor, County Clerk of Dallam County, Texas, and LeRoy Hutton, County Clerk of Randall County, Texas, Defendants.**

No. 2:95–CV–119–J.

United States District Court, N.D. Texas, Amarillo Division.

Jan. 18, 1996.

Nancy Koenig, Assistant U.S. Attorney, Lubbock, TX, Gordon Bryant, Asst. U.S. Attorney, Amarillo, TX, for plaintiff.

Gale Greenstreet, Dalhart, TX, pro se.

Thomas B. Jones, III, Randall Co. Asst. Dist. Atty., Canyon, TX, William Hunter, Greg Oelke, Hunter & Oelke, Dalhart, TX, for defendants.

## ORDER

MARY LOU ROBINSON, District Judge.

Before the Court is Plaintiff United States of America's "Motion for Summary Judgment," filed October 31, 1995. For the following reasons, Plaintiff's motion is GRANTED.

## I. BACKGROUND

This case stems from the filing of five UCC–1 financing statements against three U.S. Department of Agriculture employees named as "debtors."[1] The financing statements were filed in Dallam and Randall counties by Defendant Greenstreet and Lawrence Wayne Garth, deceased. None of the federal employees named in the statements were, or ever had been, indebted to either Greenstreet or Garth.

On June 22, 1995, the United States of America, by and through the United States Attorney for the Northern District of Texas, filed its Complaint in this action. The Complaint seeks declaratory and injunctive relief. The Plaintiff desires that the financing statements at issue be declared void *ab initio* by the Court. The United States also seeks injunctive relief authorizing and directing the Defendant County Clerks to remove and expunge from the county records the fraudulent financing statements submitted for filing by Garth and Greenstreet. Further, the Complaint requests relief permanently enjoining Defendant Greenstreet from presenting similar financing statements for filing in the future.

It appears that as a form of retribution, retaliation, or harassment, Defendant Greenstreet and Mr. Garth caused financing statements to be filed against specific Farmers Home Administration (FmHA) employees. Both Greenstreet and Garth had financed property through the FmHA in the past. Greenstreet defaulted on a promissory note; therefore, his land was foreclosed upon and subsequently sold. Garth was convicted of conversion of property pledged to the FmHA. He was sentenced by this Court in 1985 to serve two years in a federal correctional institution.

Defendant Greenstreet has filed several documents with the Court since this matter was initiated against him. The filings have routinely been voluminous and difficult to comprehend. Apparently, Mr. Greenstreet is of the opinion that "Our One Supreme

---

1. Three of the financing statements were filed against Mary E. Batenhorst. She is employed by the United States Department of Agriculture as a District Director for the Farmers Home Adminis- tration (FmHA). The other two financing statements were filed against Neal Fleming and August Hesse, III. Both men are employed as County Supervisors for the FmHA.

Court, Republic of Texas, in and for Dallam County" maintains exclusive jurisdiction over the case. He has challenged the Court's jurisdiction and venue, and moved the Court to dismiss the case against him. Mr. Greenstreet's requests were denied.

On October 31, 1995, the United States of America moved that this Court grant it summary judgment. Defendant Greenstreet responded by filing a document entitled "Notice of No Venue to This Statutory, Admiralty Court." Parsing the Response's imprecise, vague, argumentative, conclusory, and sometimes unintelligible prose, this Court gleans that Mr. Greenstreet objects to the Government's position on the following grounds. First, Greenstreet reasserts that this Court lacks jurisdiction over his case and that venue is improper. Further, he maintains that since no one filed a claim of any right, title, or interest in the property he formerly owned in accordance with an Order from "Our One Supreme Court" for the Republic of Texas, he should thus prevail by default. Additionally, Greenstreet argues that since all relevant issues have already been adjudicated by a court of "superior and competent jurisdiction" (common law court for the Republic of Texas), any action now brought by the Plaintiff should be barred by the doctrine of *res judicata.* Finally, Greenstreet contends that Plaintiff's motion should be dismissed as contemptuous, as it is in violation of prior court orders issued by Our One Supreme Court for the Republic of Texas. To support his position, Defendant Greenstreet filed findings of fact signed by 12 "jurors" which resulted from his action to quiet title before a court of common law venue.

## II. *SUMMARY JUDGMENT STANDARD*

The United States Court of Appeals for the Fifth Circuit set forth the standard for summary judgment in *Hibernia Nat'l Bank v. Carner,* 997 F.2d 94 (5th Cir.1993). In reviewing a motion for summary judgment, the Court must ask whether,

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. FED. R.CIV.P. 56(c). In making this determination, we view all of the evidence in the light most favorable to the party opposing the motion for summary judgment. *Reid v. State Farm Mutual Insurance Co.,* 784 F.2d 577, 578 (5th Cir.1986).

To defeat a motion for summary judgment, Rule 56(e) of the Federal Rules of Civil Procedure requires the non-moving party to set forth specific facts sufficient to establish that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). While the mere allegation of the existence of a dispute over material facts is not sufficient to defeat a motion for summary judgment, if the evidence shows that a reasonable jury could return a verdict for the non-moving party, the dispute is genuine. *Id.* at 247–48, 106 S.Ct. at 2510.

On the other hand, if a rational trier of fact, based upon the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *Amoco Production Co. v. Horwell Energy, Inc.,* 969 F.2d 146, 147–48 (5th Cir.1992). Such a finding may be supported by the absence of evidence necessary to establish an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992); *International Ass'n of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.,* 812 F.2d 219, 222 (5th Cir.1987).

Finally, where the non-moving party has presented evidence to support the essential elements of its claims but that evidence is merely colorable, or is not significantly probative, summary judgement may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). A summary judgment assertion made in an affidavit is simply not enough evidence to raise a genuine issue of material fact. *See*

*Lechuga v. Southern Pacific Transp. Co.,* 949 F.2d 790, 798 (5th Cir.1992) (noting that conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment.); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216 (5th Cir.1985) ( [A]ffidavits setting forth ultimate or conclusory facts ... are insufficient to either support or defeat a motion for summary judgment....) (citations omitted). Similarly, it is insufficient for the non-movant to argue in the abstract that the legal theory involved in the case encompasses factual questions. *See Pennington v. Vistron Corp.,* 876 F.2d 414, 426 (5th Cir. 1989).

*Hibernia Nat'l Bank v. Carner,* 997 F.2d 94, 97–98 (5th Cir.1993).

### III. *DISCUSSION*

■ Because the purported financing statements fail to comply with the requisites of law, they are void and of no legal consequence. As a preliminary matter, the federal employees burdened by the financing statements at issue do not fall within Texas' Uniform Commercial Code's definition of a "debtor." TEX.BUS. & COM.CODE ANN. § 9.105(a)(4) (Vernon 1991).[2] There is no evidence before the Court that the federal employees, burdened by the fraudulently filed UCC–1 statements, owed payment or other performance to Defendant Greenstreet or Mr. Garth for any obligation secured.

Furthermore, the federal employees named in the financing statements never signed the documents filed against them. Generally, a debtor's signature is necessary for a financing statement to be valid. The law is well settled that a financing statement is sufficient if it: (1) provides the names of the debtor and the secured party, (2) provides the address for the debtor and secured party, (3) contains a statement describing or

indicating the type of collateral, and (4) is signed by the debtor. TEX.BUS. & COM.CODE ANN. § 9.402(a) (Vernon Supp.1995). The Fifth Circuit has recognized the importance of the signature requirement. *See Sommers v. Int'l Business Machines,* 640 F.2d 686, 689–92 (5th Cir.1981). The situation presently before the Court is precisely the type of problem sought to be avoided by the Code draftsmen in requiring the signature of the debtor on the financing statement. The presence of a debtor's signature provides an indispensable concession to authenticity and a deterrent to inaccurate or malicious filings. As a result, the financing statements at issue are without legal effect and should be removed from the county clerks' records.

Apparently, in an attempt to circumvent the signature requirement, Defendant Greenstreet and Mr. Garth attached to the UCC–1 statements the signature page of letters or other documents previously signed by the alleged debtors. The UCC–1 financing statements in this case do not even purport to contain the signatures of the alleged debtors; instead, the signature box on the UCC–1 statements contain a typed reference to UCC § 3–415[3] and is signed by either Garth or Greenstreet. The addition of documents evincing the signature of the alleged debtors amounts to a crude compliance attempt at best and a forgery at worst.

■ Basically, there is absolutely no evidence to support the belief that a security agreement exists between the federal employees named in the financing statements and either Mr. Garth or Mr. Greenstreet. To the contrary, all of the subject federal employees signed sworn declarations that they were not and never have been indebted to Defendant Greenstreet or Lawrence Wayne Garth. Absent a valid security agreement, a financing statement by itself does not create an enforceable security interest. *In re Wes Dor, Inc.,* 996 F.2d 237, 239

**2.** Section 9.105(a)(4) defines "debtor" to mean "the person who owes payment or other performance of the obligation secured...."

**3.** This Code section, entitled "Contract of Accommodation Party," has nothing to do with a person's ability to sign a financing statement for

another. It concerns one party signing a negotiable instrument as a surety for someone already a party to the instrument. Even construed liberally, § 3–415 is simply not applicable under the circumstances.

n. 2 (10th Cir.1993); *see generally Sommers,* 640 F.2d at 689–90; *In re E.A. Fretz Co., Inc.,* 565 F.2d 366, 370–73 (5th Cir.1978); *Mosley v. Dallas Entertainment Co., Inc.,* 496 S.W.2d 237, 240 (Tex.Civ.App.—Tyler 1973, writ dism'd) (stating "The code makes no provision for a naked financing statement to be enforced as a security agreement."). Put differently, a UCC–1 financing statement in and of itself, which does not contain any evidence of an agreement, does not create a security interest or security agreement. *Mosley,* 496 S.W.2d at 240; *cf. In re Maddox,* 92 B.R. 707, 709–12 (Bankr.W.D.Tex. 1988). A financing statement exists to perfect an existing security interest and protect it from competing third party claims. Obviously, absent an existing security agreement in some form or fashion, a financing statement, without more, has no legal import or effect. Thus, even if the financing statements at issue were technically sufficient, which they are not, they would still be insufficient to represent enforceable security interests under the circumstances.

Messrs. Greenstreet and Garth's conduct illustrates a disregard for the legal system and should be considered reprehensible. They abused the system by filing fraudulent documents. Mr. Greenstreet compounded the abuse by subsequently flooding the Court with frivolous pleadings. Their actions were costly and inconvenient to many. Although there is little federal case law precisely addressing the specific conduct Greenstreet engaged in before this Court, his tactics are unfortunately not uncommon. As a consequence, more attention to Greenstreet's activity is warranted.

■ Greenstreet argues that he is of "Freeman Character" and "of the White Preamble Citizenship and not one of the 14th Amendment legislated enfranchised De Facto colored races." He further claims that he is a "white Preamble natural sovereign Common Law De Jure Citizen of the Republic/State of Texas." As a result, he concludes that he is a sovereign, not subject to the jurisdiction of this Court. Greenstreet's argument is entirely frivolous. Except for documents allegedly issued from the common law court Greenstreet claims is superior to this Court, no support for his position exists. Greenstreet provides no acceptable authority or cogent analysis to support his contention that this Court lacks personal jurisdiction over him. *See generally United States v. Masat,* 948 F.2d 923, 934 (5th Cir.1991), *cert. denied,* 506 U.S. 835, 113 S.Ct. 108, 121 L.Ed.2d 66 (1992); *United States v. Schmitt,* 784 F.2d 880, 882 (8th Cir.1986), *habeas corpus proceeding,* 752 F.Supp. 306 (D.Minn. 1990), *aff'd,* 938 F.2d 189 (8th Cir.1991), *cert. denied,* 502 U.S. 985, 112 S.Ct. 592, 116 L.Ed.2d 616 (1991) (describing appellants' argument that district court lacked personal jurisdiction over them because they were "natural freemen" as frivolous). Accordingly, this Court finds Greenstreet's argument lacking in justification.

■ Likewise, Greenstreet failed to support his position that this Court lacks subject matter jurisdiction. As the Government correctly notes, this Court has subject matter jurisdiction pursuant to Title 28 of the United States Code, §§ 1331 and 1345. In addition, venue is proper in this district under 28 U.S.C. § 1391(b) because all of the Defendants reside within this district, and the acts giving rise to the Plaintiffs claim for relief occurred within this district. Mr. Greenstreet's contentions to the contrary are simply misstatements of the law. Greenstreet "removed" this case to Our One Supreme Court for the Republic of Texas. Thus, he argues, this Court lacks concurrent subject matter jurisdiction in "Common Law Venue." His position is without merit. In 1992, the Austin Court of Appeals determined that the "Common Law Court for the Republic of Texas" did not exist. *Kimmell v. Burnet County Appraisal District,* 835 S.W.2d 108, 109 (Tex.App.—Austin 1992, writ dism'd w.o.j.) (stating "We hold that the Common Law Court for the Republic of Texas, if it ever existed, has ceased to exist since February 16, 1846."). That court went on to observe in a footnote that the Republic of Texas adopted the English common law effective March 16, 1840, and the state government was organized on February 16, 1846. *Id.* at n. 2. The Common Law Court for the Republic of Texas could therefore have only existed between these two dates. By analo-

gy and for the same reasons, this Court holds that the mythical judiciary described as Our One Supreme Court for the Republic of Texas does not exist. As a result, this Court rejects Defendant Greenstreet's subject matter jurisdictional arguments.

■ Accordingly, this Court also rejects Greenstreet's attempt to defeat the Plaintiff's motion for summary judgment based on rulings or orders from the mythical common law court he feels is superior to this Court. Thus, Greenstreet is not entitled to a default judgment because of Plaintiff's non-compliance with orders from a fictitious court. Similarly, Greenstreet will not benefit from a *res judicata* defense or from his attempt to prove that the Plaintiff's motion is contemptuous. On balance, the authority Greenstreet relies upon has absolutely no legal value.

■ Perhaps the most bizarre basis for Greenstreet's position rests on the theory that the American system of currency is illegal and unconstitutional. Liberally construing the language of his pleadings before the Court, Greenstreet apparently believes that he has never been provided with funding (i.e. "lawful money") from the FmHA, under their contract, because it failed to give him money in silver or gold. Presumably, he therefore reasons that filing a UCC–1 is an appropriate remedy for him to pursue. Greenstreet contends that federal reserve notes are not legal tender, because they violate Article 1, Section 10, of the United States Constitution. Defendant Greenstreet's argument centers around his view that "the Congress of the United States of America declared a partial NATIONAL BANKRUPTCY on June 5, 1933, under H.J.R. 192 which abrogated the gold clause and deprived the American Citizens of their Constitutional Article 1, Section 10, lawful money" and that the "COINAGE ACT OF 1965 deprived the American Citizens of their required and mandated ... silver coinage." Thus, Greenstreet extrapolates, until he is given funds in silver or gold, he will not consider any past payment to have been acceptable or satisfactory. Attacking the legitimacy of federal reserve notes is not a novel argument. Others have asserted such

claims; however, they have been summarily rejected. *See, e.g., Rothacker v. Rockwall County Central Appraisal District,* 703 S.W.2d 235 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (citing state and federal authority declaring federal reserve notes to be legal tender). This Court will also reject Mr. Greenstreet's coinage arguments. The Court believes that Defendant's position is simply irrational.

■ Finally, Defendant Greenstreet's response to Plaintiff's motion for summary judgment identifies this Court as an "Admiralty Court" without further discussing his allegation. If his reference is to be construed as a jurisdictional challenge, his motion is denied. Others have attempted to persuade the judiciary that fringe on an American flag denotes a court of admiralty. In light of the fact that this Court has such a flag in its courtroom, the issue is addressed. The concept behind the theory the proponent asserts is that if a courtroom is adorned with a flag which happens to be fringed around the edges, such decor indicates that the court is one of admiralty jurisdiction exclusively. To think that a fringed flag adorning the courtroom somehow limits this Court's jurisdiction is frivolous. *See Vella v. McCammon,* 671 F.Supp. 1128, 1129 (S.D.Tex.1987) (describing petitioner's claim that court lacked jurisdiction because flag was fringed as "without merit" and "totally frivolous"). Unfortunately for Defendant Greenstreet, decor is not a determinant for jurisdiction.

The summary judgment evidence before the Court is clear. Viewing all factual questions in the light most favorable to Defendant Greenstreet, no genuine issue of material fact exists that would necessitate a trial in this case. The United States of America, as the moving party, has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. It has satisfied its burden. Once the movant carries its burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Celotex,* 477 U.S. at 323–26, 106 S.Ct. at 2553–54. Unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *See Krim v. BanTexas Group, Inc.,* 989 F.2d

1435, 1442 (5th Cir.1993). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *see also Kelley v. Price–Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 688, 126 L.Ed.2d 656 (1994). Even under the most generous and liberal of interpretations, the summary judgment evidence provided by Defendant Greenstreet cannot be interpreted to provide a basis whereby a rational jury could return a verdict in his favor.

The evidence before the Court clearly demonstrates that the financing statements filed by Defendant Greenstreet and Mr. Garth are fraudulent. The UCC–1 statements at issue are deficient technically and substantively. Mr. Greenstreet came forward with no understandable evidence to defeat Plaintiff's properly supported motion for summary judgment. Accordingly, Plaintiff is entitled to relief in this matter.

Thus, the Court enters its judgment in favor of the Plaintiff and against the Defendants as follows:

(1) The financing statements caused to be filed in Dallam and Randall counties by Gale E. Greenstreet and Lawrence Wayne Garth against Mary E. Batenhorst, Neil J. Fleming, and August H. Hesse, III, are HEREBY DECLARED VOID *AB INITIO;*

(2) This Court FURTHER ORDERS that the County Clerks of Randall and Dallam counties remove and expunge the void financing statements and all of the related documents and filings from the Public Records of their respective counties;

(3) This Court FURTHER ORDERS that Gale E. Greenstreet be permanently enjoined from further similar filings against employees of the United States of America without approval from a United States District Court; and

(4) This Court FURTHER ORDERS that all *costs* incurred in this lawsuit be assessed against Defendant Greenstreet.

## IV.  *CONCLUSION*

Litigants such as Mr. Greenstreet should not be underestimated. They are often motivated and know how to work the system. Unfortunately, the honest taxpayer is victimized as a result. Tactics such as declaring oneself a sovereign, turning to common law courts, challenging the jurisdiction of state and federal trial courts, and contending that federal reserve notes are not legal tender are favorites among these litigants. Such arguments, however, are time consuming for courts to process and routinely futile.

Greenstreet's arguments in this case are fatally without merit. The UCC–1 statements he and Mr. Garth filed are fraudulent and wholly inadequate. They lack the formal requisites required by the law and were not filed in good faith. Thus, the statements enjoy no legal force or effect.

Mr. Greenstreet's improper tactics failed to overcome Plaintiff's properly supported motion for summary judgment. As a result, judgment is appropriately entered against the defendants. Furthermore, it is the expectation of this Court that the equitable relief and assessments granted will reflect the Court's frustration with the arguments and tactics employed by Defendant Greenstreet. Mr. Greenstreet is hereby cautioned that if he continues to take legal positions which are not supported by existing law, severe monetary sanctions may result, his *pro se* status notwithstanding. Hopefully, litigants like Mr. Greenstreet will be unwilling to pay to harass the government in the future.

It is SO ORDERED.