**Richard Lance McLAREN and Evelyn Ann McLaren, Plaintiffs,**

v.

**UNITED STATES INCORPORATED d.b.a. United States of America, et al., Defendants.**

**Richard Lance McLAREN, et al. Plaintiffs,**

v.

**JEFF DAVIS COUNTY, TEXAS, et al., Defendants.**

**Richard Lance McLAREN, et al., Plaintiffs,**

v.

**The STATE OF TEXAS INTERNATIONAL TRUST, et al., Defendants.**

Nos. CIV. A. 97–1561 (PFL), 97–1939 (PLF), 97–2123 (PLF).

United States District Court, District of Columbia.

April 30, 1998.

Richard Lance McLaren, Fort Davis, TX, pro se.

Evelyn Ann McLaren, Fort Worth, TX, pro se.

Bruce R. Hegyi, U.S. Attorney's Office, Washington, DC, Richard William Beckler, Michael Gerard McGovern, Christine Pei–Wen Hsu, Fulbright & Jaworski, Washington, DC, Daniel E. Maeso, Office of Attorney General of Austin, TX, Austin, TX, Michael Francis Crotty, American Bankers Association, Washington, DC, for Defendants.

## MEMORANDUM OPINION

PAUL L. FRIEDMAN, District Judge.

These three consolidated cases stem from the same premise: that the Republic of Texas was never legitimately annexed by the United States and never became a state of the United States, and that the Republic of Texas therefore remains a sovereign nation bordered by the United States of America and Mexico. Under this premise, plaintiff Richard McLaren is the self-appointed "Chief Ambassador and Consul General" of the "Republic of Texas." As purported residents of another country, plaintiffs Richard McLaren and his wife Evelyn McLaren, proceeding *pro se*, maintain that they are nonresident aliens of the United States and foreign diplomats of the Republic of Texas.[1]

1. Richard McLaren is now serving a 99–year state prison sentence for his conviction regarding an April 1997 kidnaping incident. *See infra* at 49–50. Richard and Evelyn McLaren have also been convicted on numerous counts of mail and bank fraud in the United States District Court for the Northern District of Texas, Dallas Division. The fraud convictions stem from the McLarens having issued Republic of Texas "warrants," financial documents resembling checks, to purchase approximately $3.4 million in various goods and services. *See Eight 'Republic of Texas' Separatists Convicted of Fraud*, THE WASHINGTON POST, April 15, 1998, A Section, *available in Westlaw* 1998 WL 2479061.

2. *See* Gov't Mot. to Dismiss or for Summary Judgment, Ex. B (Scott Parks, *Separatist Captures Courthouse Workers' Interest*, THE DALLAS MORNING NEWS, Oct. 25, 1997, *available in Westlaw*, 1997 WL 11530637); Eduardo Montes, *Texas Siege Wounds Still Hurt*, AP ONLINE, April 26, 1998, *available in Westlaw*, 1998 WL 6656076;

## I. BACKGROUND

On April 27, 1997, in the name of the Republic of Texas movement, the McLarens and their followers abducted a West Texas couple and held them hostage as "prisoners of war" for 13 hours in the Republic of Texas "embassy" near Fort Davis, Texas. This kidnaping incident led to a seven-day standoff between the Republic of Texas followers and approximately 300 law enforcement officers and ended in the surrender of the McLarens and most of the Republic of Texas followers.[2] Approximately two hours before the surrender, Richard McLaren and Texas Ranger Captain Barry Caver signed a ceasefire agreement prepared by plaintiffs labeled "International Agreement and Terms of Cease Fire." Complaint (Civil Action No. 97–1561), Ex. A. Aside from providing for a peaceful resolution to the standoff, the agreement also provided that the Republic of Texas will "commence legal actions in the District Court of [sic] The District of Columbia for the rights of the inhabitants on the soil of Texas to by popular vote decide [the] issue of Texas Independence." *Id.* at ¶ 3. The three cases now before this Court are a result of this provision of the cease-fire agreement.

From the numerous documents plaintiffs have filed with the Court, it appears that plaintiffs seek a declaratory judgment that the Republic of Texas is an independent nation that was never legitimately annexed by the United States.[3] In seeking this relief,

Sue Anne Pressley, *Peaceful End Achieved in Texas Siege*, THE WASHINGTON POST, May 4, 1997, A Section, *available in Westlaw*, 1997 WL 10691593.

3. Through a very liberal interpretation, plaintiffs' complaints in these three cases could also be viewed as raising a variety of other claims, including claims sounding in tort and contract. Plaintiffs also seek damages exceeding $65 million. All of these claims, however, rely on this Court first entering a declaratory judgment that Texas is an independent country. Because it will not issue such a declaration, the Court finds it unnecessary to consider the remainder of plaintiffs' claims.

To the extent that plaintiffs are requesting habeas corpus relief pursuant to 28 U.S.C. § 2254, plaintiffs have brought their claim in the wrong court. First, plaintiffs have failed to allege that they have exhausted the remedies available to them in the courts of Texas. 28 U.S.C.

plaintiffs have named a plethora of defendants (approximately 77 in all), including the President and Vice President of the United States, two United States Senators and numerous members of the House of Representatives, several federal and state judges, a United States Attorney and several of his Assistants, several federal law enforcement officers, numerous Texas state officials and legislators, the United States, the Republic of Mexico, the United Nations, and several private individuals and entities.

The matters currently before the Court are the motions to dismiss or for summary judgment or, alternatively, to transfer venue to the U.S. District Court for the Northern District of Texas, that have been filed by the various defendants in these three cases. Upon consideration of the defendants' motions and plaintiffs' numerous filings, the Court concludes that it is appropriate to grant defendants' motions to dismiss and to deny all motions and/or requests plaintiffs have filed.

## II.  DISCUSSION

On February 19, 1846, at a ceremony on the steps of the old wooden capitol building in Austin, Dr. Anson Jones, the last president of the Republic of Texas, proclaimed the end of independence and the beginning of statehood. "The final act in this great drama is now performed," Jones concluded. "The republic of Texas is no more."

Ralph H. Brock, *The Republic of Texas is No More: An Answer to the Claim that Texas was Unconstitutionally Annexed to the United States,* 28 TEX. TECH. L. REV. 679, 680 (1997).

The history of how Texas became a state is admittedly tortuous. Indeed, Texas' statehood tale is plagued with political stalling, confusion and delay from 1836, the year in which the Republic of Texas won its independence from Mexico, to 1845, the year in which Texas finally became one of the United States of America. The tale is even more complicated by the fact that Texas attempted to secede from the United States during the Civil War. On December 29, 1845, however, Texas did in fact become the 28th state of the United States. On that date, President James K. Polk, with the consent and concurrence of the people of the Republic of Texas, signed a joint Congressional resolution stating that the State of Texas was "admitted into the Union on an equal footing with the original States in all respects whatever." Joint Resolution for the Admission of the State of Texas into the Union, H.R. J. Res., 29th Cong., 9 Stat. 108, 108 (1845).[4]

Any questions regarding the finality or durability of Texas' statehood were laid to rest by the Supreme Court in *Texas v. White,* 74 U.S. (7 Wall.) 700, 722, 726, 19 L.Ed. 227 (1868):

> The Republic of Texas was admitted into the Union, as a State, on the 27th of December, 1845. By this act the new State, and the people of the new State, were invested with all the rights, and became subject to all the responsibilities and duties of the original States under the Constitution.

> *    *    *    *    *    *

> . When ... Texas became one of the United States, she entered into an indissoluble relation. All the obligations of perpetual union, and all the guaranties of republican government in the Union, attached at once to the State. The act which consummated her admission into the Union was something more than a compact; it was the incorporation of a new member into the political body. And it was final. The union between Texas and the other States was as complete, as perpetual, and as indissoluble as the union between the

---

§ 2254(b)(1)(A). Second, if plaintiffs' habeas petition can properly be brought in federal court, it should be brought in the district in which the prisoners are incarcerated, in this case, the Northern District of Texas. *See Chatman–Bey v. Thornburgh,* 864 F.2d 804, 810, 813–14 (D.C.Cir. 1988); *Guerra v. Meese,* 786 F.2d 414, 415–16 (D.C.Cir.1986).

**4.** *See* Ralph H. Brock, *The Republic of Texas is No More: An Answer to the Claim that Texas was Unconstitutionally Annexed to the United States,* 28 TEX. TECH. L. REV. at 690–92, 728–31; James W. Paulsen, *If at First You Don't Secede: Ten Reasons Why the "Republic of Texas" Movement is Wrong,* 38 S. TEX. L. REV. 801 (1997).

original States. There was no place for reconsideration, or revocation, except through revolution, or through consent of the States.

[T]he ordinance of secession, adopted by the convention and ratified by a majority of the citizens of Texas, and all the acts of her legislature intended to give effect to that ordinance, were absolutely null. They were utterly without operation in law. The obligations of the State, as member of the Union, and of every citizen of the State, as a citizen of the United States, remained perfect and unimpaired. It certainly follows that the State did not cease to be a State, nor her citizens to be citizens of the Union. If this were otherwise, the State must have become foreign, and her citizens foreigners. The war must have ceased to be a war for the suppression of rebellion, and must have become a war for conquest and subjugation.

Our conclusion therefore is, that Texas continued to be a State, and a State of the Union, notwithstanding the transactions to which we have referred. And this conclusion, in our judgment, is not in conflict with any act or declaration of any department of the National government, but entirely in accordance with the whole series of such acts and declarations since the first outbreak of the rebellion.

*See also United States v. Texas,* 339 U.S. 707, 713–14, 719–20, 70 S.Ct. 918, 94 L.Ed.

1221 (1950); *United States v. Greenstreet,* 912 F.Supp. 224, 228–29 (N.D.Tex.1996); *Stewart Title Guaranty Co. v. McLaren,* P–96–CA–06 (W.D. Tex. April 4, 1996) (attached as Gov't Ex. C. to Federal Defs.' Mot. to Dismiss or for Summary Judgment).[5] Despite plaintiffs' argument that the Supreme Court's reasoning in *Texas v. White* is fatally flawed, it is the precedent by which this Court and all courts of the United States are bound. In 1845, Texas became the 28th state of the United States of America. The Republic of Texas no longer exists.

Based on the foregoing, the Court grants defendants' motions to dismiss and denies plaintiffs' motions.[6] An Order and Judgment consistent with this Opinion shall be issued this same day.

SO ORDERED.

## ORDER AND JUDGMENT

This matter is before the Court on the motions to dismiss or for summary judgment or, alternatively, for transfer of venue filed by the defendants' in these three consolidated cases. Upon consideration of all defendants' motions and plaintiffs' numerous filings, it is hereby

ORDERED that defendants' motions to dismiss filed in these three consolidated cases (Civil Action Nos. 97–1561, 97–1939, 97–2123) are GRANTED; it is

**5.** The United States District Court for the Western District of Texas directly confronted the legal issues presented by plaintiffs in this action. In its April 4, 1996 Judgment, the court in *Stewart Title* decreed, *inter alia,* that

(e) the Republic of Texas does not currently exist;

(f) the Republic of Texas ceased to exist in 1845 or 1846;

(g) the Republic of Texas was annexed to the U.S.A. in 1845;

(h) Texas was admitted as a State in the U.S.A. in 1845;

(i) the Joint Resolution dated March 1, 1935 of the Congress of the U.S.A. is valid and effective;

(j) the Joint Resolution dated December 29, 1845 of the Congress of the U.S.A. is valid and effective;

(k) the purported secession by Texas in 1861 was void, invalid, and without legal effect;

(l) even if and to the extent Texas validly seceded from the U.S.A. in 1861, Texas re-

joined the U.S.A. as a State no later than 1866;

(m) Texas is not currently in a state of secession from the U.S.A.;

(n) Texas is currently a State in the U.S.A.

\* \* \* \* \* \*

(w) The "Republic of Texas" is merely an unincorporated association in the State of Texas.

*Stewart Title Guaranty Co. v. McLaren,* P–96–CA–06, Judgment at 4–5 (W.D. Tex. April 4, 1996). Because the Judgment in *Stewart Title* was entered in the context of default, however, this Court cannot apply the familiar doctrine of issue preclusion to estop plaintiffs from bringing the same legal issue to this Court. *See Tutt v. Doby,* 459 F.2d 1195, 1199–1200 (D.C.Cir.1972).

**6.** As the defendants point out in their motions papers, there are numerous other arguments on the basis of which this Court could have granted the relief sought by defendants.

FURTHER ORDERED that these three cases are hereby DISMISSED and JUDGMENT is entered for defendants in each case; it is

FURTHER ORDERED that the motions that plaintiffs have filed with the Court are DENIED; and it is

FURTHER ORDERED that the Clerk of the Court shall remove these cases from the docket of this Court. This is a final appealable order. *See* Rule 4(a) of the Federal Rules of Appellate Procedure.

SO ORDERED.