COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH


NO. 2-08-010-CV

ROYCE SANDERS                                                    APPELLANT

V.

COMERICA BANK, INC.                                              APPELLEE
D/B/A COMERICA BANK — TEXAS

------------

FROM THE COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

------------

## OPINION

------------

### I.  INTRODUCTION

Appellant Royce Sanders appeals the summary judgment entered against him and in favor of Appellee Comerica Bank, Inc. d/b/a Comerica Bank — Texas ("Comerica").  We will affirm.

### II.  FACTUAL AND PROCEDURAL BACKGROUND

Sanders sold his construction company, Legend Construction, Inc., to David Chaney.  In connection with the sale, Sanders and Chaney signed a

March 13, 2001 security agreement giving Sanders a security interest in collateral described as "Certificate of Stock No. 5, representing 400 shares of stock of Legend Construction, Inc., a Texas corporation, and all inuring to the shares of stock of said corporation, tangible and intangible."  Sanders filed a March 30, 2001 financing statement covering the following collateral:  "400 Shares of common stock of Legend Construction, Inc., a Texas corporation Certificate No. 5."  Approximately three years later, Sanders filed a March 29, 2004 financing statement purportedly covering thirty-three pieces of construction equipment and some office assets.  This second financing statement is not signed by the debtor.

Subsequently, Comerica made a loan to Legend.  In connection with the loan, Comerica requested that Sanders sign, and Sanders did sign, a Subordination Agreement, subordinating any interest he had in the construction equipment to Comerica's interest.  Legend defaulted in its payments to Comerica, and Comerica foreclosed on the construction equipment collateral securing its loan to Legend.  The proceeds from the foreclosure sale of the construction equipment exceeded Legend's indebtedness to Comerica by $55,860.00.  Comerica paid this surplus to Legend.

Sanders sued Comerica claiming that the $55,860.00 surplus should have been paid to him.  Comerica moved for a traditional summary judgment alleging

2

as one of its grounds that Sanders "failed to obtain a security agreement regarding the Construction Equipment and, thus, held no perfected security interest in the Construction Equipment. Sanders, thus, had no right to the surplus." The trial court granted Comerica's motion for summary judgment, and Sanders perfected this appeal. In two issues, Sanders claims that the trial court erred by granting summary judgment for Comerica.

### III. STANDARD OF REVIEW

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *see* Tex. R. Civ. P. 166a(b), (c). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *IHS Cedars Treatment Ctr.*, 143 S.W.3d at 798.

### IV. SANDERS POSSESSES A SECURITY INTEREST ONLY IN STOCK

In his first issue, Sanders claims that the trial court erred by granting Comerica summary judgment on the ground that Sanders held no security interest in the construction equipment. The summary judgment evidence establishes that the security agreement signed by Sanders and Chaney created a security interest for Sanders only in the collateral described as "Certificate of

3

Stock No. 5, representing 400 shares of stock of Legend Construction, Inc., a Texas corporation, and all inuring to the shares of stock of said corporation, tangible and intangible." The March 30, 2001 financing statement filed by Sanders again described the collateral as "400 Shares of common stock of Legend Construction, Inc., a Texas corporation Certificate No. 5."

Sanders argues that the description of the collateral in the security agreement at least creates a fact issue as to whether it created a security interest in the construction equipment ultimately sold by Comerica. But the law is clear that in order to create a security interest, the security agreement must describe the collateral with sufficient particularity to identify it. *See* Tex. Bus. & Com. Code Ann. § 9.108(a) (Vernon 2002); *see also Orix Credit Alliance, Inc. v. Omnibank, N.A.*, 858 S.W.2d 586, 593 (Tex. App.—Houston [14th Dist.] 1993, writ dism'd) (holding collateral description in security agreement of "property . . . wherever located" insufficient to create security interest in intangible property); *see also Unicut, Inc. v. Tex. Commerce Bank-Chem.*, 704 S.W.2d 442, 444 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (discussing sufficiency of security agreement's description of collateral). By statute, a collateral description of "all the debtor's assets" or "all the debtor's personal property" does not reasonably identify the collateral. Tex. Bus. & Com. Code Ann. § 9.108(c). Thus, we hold that the description of the

4

collateral in the March 13, 2001 security agreement signed by Sanders and Chaney as a matter of law did not create a security interest in the construction equipment; it identified as collateral only Certificate of Stock No. 5.

We nonetheless look to the balance of the security agreement to determine whether it could be construed in Sanders's favor as identifying the construction equipment as collateral somewhere in the agreement other than under the title "Collateral." Another category of information in the security agreement is titled, "Classification of Collateral," and it lists the classification as "Stock, Chattel Paper, Assets and General Intangibles." Although identification of collateral by classification may be permissible, the security agreement at issue did not include the classification of "equipment," which is the general classification of the construction equipment collateral at issue. *See id*. § 9.102(33). Thus, we cannot agree that any language in the security agreement raises a fact question on the identity of the collateral to which Sanders's security interest attached; a security interest was created only in Stock Certificate No. 5.

Sanders further argues that the subsequent, March 29, 2004 financing statement purportedly covering thirty-three pieces of construction equipment and some office assets gave him the right to the $55,860.00 surplus generated by Comerica's sale of the construction equipment. But a financing statement

is ineffectual absent an executed document creating a security interest. *See Crow-Southland Joint Venture No. 1 v. N. Fort Worth Bank*, 838 S.W.2d 720, 724 (Tex. App.—Dallas 1992, writ denied) (explaining that a financing statement merely serves to notify third parties that debtor's property is or may be encumbered); *Mosley v. Dallas Entm't Co.*, 496 S.W.2d 237, 240 (Tex. App.—Tyler 1973, writ dism'd) (recognizing financing statement alone is ineffectual to create security interest absent an executed security agreement). Thus, the March 29, 2004 financing statement provided Sanders with no further security interest than that reflected in the March 13, 2001 security agreement. *See Crow-Southland Joint Venture No. 1*, 838 S.W.2d at 724; *Mosley*, 496 S.W.2d at 240.

Finally, Sanders argues that Comerica knew when it sold the equipment that Sanders claimed an interest in it because the March 29, 2004 financing statement was on file and because Comerica asked Sanders to execute the Subordination Agreement. Neither Comerica's factual knowledge of Sanders's filing nor Comerica's request that Sanders sign the Subordination Agreement, however, change the legal effect of the security agreement, which creates a security interest for Sanders in only Certificate of Stock No.5.

For these reasons, we overrule Sanders's first issue. The trial court correctly granted summary judgment on Comerica's contention that it had

6

conclusively established that Sanders failed to obtain a valid security interest in the construction equipment.

Because the trial court's order granting summary judgment does not state the ground on which it was granted, Sanders was required on appeal to negate every possible ground asserted by Comerica for summary judgment. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993). Because we have held that the trial court properly granted Comerica summary judgment on the ground that Sanders failed to obtain a valid security interest in the construction equipment, we must affirm the trial court's summary judgment and need not address Sanders's other challenge to the summary judgment. *See, e.g., FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000).

## V. CONCLUSION

Having overruled Sanders's first issue and having held that Comerica conclusively established its right to summary judgment, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED: December 4, 2008

7