## GENERAL ELECTRIC CREDIT CORP. *v.*
## BANKERS COMMERCIAL CORP. ET AL

5-4560                                      429 S. W. 2d 60

### Opinion delivered May 27, 1968
[Rehearing denied July 15, 1968.]

*Wootton, Land & Matthews,* for appellant.

*Mike J. Etoch Jr.* and *Anderson & Anderson,* for appellee.

GEORGE ROSE SMITH, Justice. This is primarily a dispute between two finance companies about their security interests in a dragline that was sold on credit by Southland Tractors, Inc., to the appellee J. T. Arnold, III. Both security agreements held by the rival finance companies are defective, that of Bankers Commercial Corporation not having met the filing requirements of the Uniform Commercial Code and that of General Electric Credit Corporation being a forgery. This is an appeal by GECC from a judgment holding that Bankers alone has a valid security interest in the dragline. Arnold, the debtor, cross appeals upon another issue.

On April 13, 1966, Southland sold the dragline to Arnold for $33,850.04. The contract of sale was in the form of a three-year lease which recited that Arnold had paid $5,000 as advance rental and would pay the remainder in 36 equal monthly installments. Arnold was given the option of purchasing the dragline at any time during the term of the lease by paying the $33,850.04, less the total amount of rents already paid. Under the Code such a lease is treated as a security agreement. Ark. Stat. Ann. § 85-1-201 (37) (Add. 1961).

On the same day Southland (a) duly filed a financing statement showing itself as the creditor and Arnold as the debtor and (b) assigned the lease contract to Bankers for a cash consideration of more than $24,000.00. Bankers did not file anything to show its security interest; so Southland continued as the creditor of record.

About three months later Southland informed Arnold that it had arranged to refinance the debt with General Electric Credit Corporation. The identity of the creditor made no difference to Arnold, who readily signed another financing statement showing GECC as the creditor. Southland then forged Arnold's signature to a three-year lease, similar to the one held by Bankers, and assigned it to GECC. In that transaction GECC, whose manager realized that Southland was having fi-

nancial troubles, paid Southland $4,107.06 in cash and credited delinquent Southland accounts with $20,091.94. GECC's manager had talked with Arnold by telephone to be sure that he had the dragline and that he understood the gross amount due and the size of the monthly payments. Neither Southland nor Arnold mentioned the outstanding contract with Bankers; so GECC's manager (who had checked the financing statement of record) did not realize that Bankers had a security interest in the dragline. At GECC's request Southland terminated the earlier financing statement, as authorized by the Code. Section 85-9-404. Southland soon went into bankruptcy.

Arnold assumed that the debt had been refinanced, but he soon received demands for payment from both Bankers and GECC. Since that time Arnold has consistently taken the position that he will make his payments when he learns which creditor is entitled to the money.

This action to replevy the dragline was brought by GECC against Arnold. Bankers intervened to assert its claim. The trial court, sitting without a jury, upheld Bankers's security interest, permitted it to accelerate the maturity of its entire claim, and ordered the property sold as in a foreclosure suit. The order of sale was superseded by GECC pending the appeal.

Upon the main dispute the trial court's decision was right. Bankers holds a valid security agreement, admittedly signed by Arnold. Bankers's failure to file any notice of its creditorship might have allowed later valid claims to take priority, but as between the two of them Bankers has an enforceable cause of action against Arnold.

By contrast, the only genuine instrument held by GECC is its financing statement. A financing statement, standing alone, does not create a security interest in the debtor's property. It merely serves notice that the

named creditor may have a security interest. Section 85-9-402, Comment 2; Meek, "Secured Transactions Under the Uniform Commercial Code," 18 Ark. L. Rev. 30, 40 (1964). Of course the forged lease assigned by Southland to GECC had no effect upon Arnold's interest in the dragline. *Hall* v. *Mitchell*, 175 Ark. 641, 1 S. W. 2d 59 (1927).

Counsel for GECC insist that Bankers and Arnold have estopped themselves from contesting the GECC claim: Bankers by its failure to perfect its security interest and Arnold by his failure to mention the Bankers contract during his conversation with GECC's manager. We need not speculate whether such an estoppel would run counter to the Code requirement that security agreements be in writing. Section 85-9-203. If Bankers was at fault in failing to file notice, GECC was also at fault in accepting the lease from an assignor of doubtful solvency without verifying Arnold's signature. Arnold's good faith was attested by his own testimony. The issues of estoppel narrow down to disputed questions of fact, upon which there is ample substantial evidence to support the circuit court's judgment.

On cross appeal Arnold is entitled to relief. Both GECC and Bankers sought to accelerate the maturity of their total claims, but their failure to reserve that power in the contracts precluded them from exercising it. *Farnsworth* v. *Hoover*, 66 Ark. 367, 50 S. W. 865 (1899). At best Bankers may be entitled to damages resulting from Arnold's failure to make his payments when due —the measure of such damages presumably being interest at the legal rate and certainly not being the rents to accrue during the remaining life of the lease.

Affirmed on direct appeal; reversed on cross appeal and remanded for further proceedings.