In re COLORTRAN, INC., Debtor.

EXPEDITORS INTERNATIONAL OF
WASHINGTON, INC., Appellant,

v.

CITICORP NORTH AMERICA, INC.,
Citibank, N.A., and Colortran,
Inc., Appellee.

BAP No. CC–95–2264–HJeMe.
Bankruptcy No. LA 95–36537 ER.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Oct. 22, 1997.

Decided Dec. 22, 1997.

See also 210 B.R. 823.

Robert E. White, San Francisco, CA, for Expeditors International of Washington, Inc.

Gregory K. Jones, Hennigan, Mercer & Bennett, Los Angeles, CA, for Colortran, Inc.

Before: HAGAN, JELLEN [1], and MEYERS, Bankruptcy Judges.

## OPINION

HAGAN, Bankruptcy Judge.

Expeditors International of Washington, Inc. ("Expeditors"), shipped freight for Co-

1. Hon. Edward D. Jellen, Chief Bankruptcy Judge for the Northern District of California, sitting by designation.

lortran, Inc. ("Colortran"), the debtor. When Colortran filed its chapter 11 petition, Expeditors asserted a lien against Colortran's shipment in its possession and refused to deliver the products until Colortran paid a past-due bill from a previous shipment. Colortran filed a motion to compromise the claim by paying the amounts due Expeditors. The bankruptcy court denied the motion to compromise and invalidated Expeditors' lien. Expeditors appeals that order. Because Expeditors was denied the proper procedure in the invalidation of its lien, we REVERSE and REMAND the bankruptcy court's ruling.

## FACTS

Colortran manufactures lighting fixtures for stage, studio and architectural applications and installs lighting and control equipment for theaters, major television networks, art centers, hotels and theme parks. Expeditors is a freight forwarder and was engaged by Colortran to transport Colortran's products.

In April 1994, Colortran completed and signed a credit application with Expeditors providing: "[Expeditors] shall have a general lien on any and all property (and documents relating thereto) of [Colortran], in its possession, custody or control or en route, for all claims for charges, expenses or advances incurred by [Expeditors] in connection with any shipments of [Colortran]..." Each of Expeditors' invoices contained the same language.

On October 16, 1995, Colortran filed for chapter 11[2] relief. On that date, Expeditors possessed lighting filters worth approximately $90,000 it was shipping for Colortran from the United Kingdom. Colortran owed Expeditors approximately $8,000 for accrued transportation and storage charges on a previous unrelated shipment.

When it learned of Colortran's chapter 11 filing, Expeditors contacted Colortran's counsel and asserted, based on the credit application and invoices, that Expeditors had a valid lien that attached to the shipment in its possession. According to Colortran's counsel, Colortran, needing the lighting filters to complete a large order, determined that it would be cost-effective to pay Expeditors the past-due balance rather than litigate the validity of the lien.

Colortran filed a motion to approve a compromise whereby Colortran would pay the past-due bill and Expeditors would release the shipment.[3] In its motion, Colortran stated, "Expediters [sic] refuses to release the Shipment to Colortran until Colortran is current on all of its outstanding obligations to Expediters [sic]." No supporting documents were filed with the motion.

Neither Expeditors nor its counsel appeared at a hearing for the proposed settlement. The court denied the motion, based partially on the fact that Expeditors had not obtained relief from the § 362 automatic stay before refusing to release the shipment. The court further found Expeditors did not have a valid lien, and that Expeditors was attempting to "bootstrap itself into a position over other unsecured creditors." Expeditors was ordered to turn over the shipment to Colortran and Colortran was ordered to file a motion for violation of the stay.[4]

The court's written judgment provided "that no basis exists to support the contention of [Expeditors] that it has a valid and perfected lien on the Debtor's goods" and required Expeditors to turn over the property. This appeal is from the denial of the motion to compromise.

---

**2.** Unless otherwise indicated, all references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330; references to "rule" or "Fed.R.Bankr.P." are to the Federal Rules of Bankruptcy Procedure 1001–9036, which make applicable certain Federal Rules of Civil Procedure (Fed.R.Civ.P.)

**3.** Colortran apparently served its amended motion, but not its original motion, on Expeditors. The two motions are substantially the same. Expeditors apparently did not receive a copy of

declaration that stated that Colortran disputed Expeditors' lien.

**4.** At a January 10, 1996 hearing, the bankruptcy court granted Colortran's sanctions motion and sanctioned Expeditors $1,000. Expeditors appealed this ruling and in a published opinion the Bankruptcy Appellate Panel determined that Expeditors had violated the automatic stay regardless of the validity of its lien. *In re Colortran, Inc.*, 210 B.R. 823 (9th Cir. BAP 1997).

## ISSUES

On appeal, Expeditors claims it has a perfected security interest in the goods in its possession, and since the bankruptcy court incorrectly found that it had no security interest, it also erroneously denied the compromise. Thus, there are two issues: whether the bankruptcy court erred when it invalidated the lien and whether the bankruptcy court erred when it denied the compromise.

## STANDARD OF REVIEW

■ We review a bankruptcy court's findings of fact under the clearly erroneous standard. *In re Pizante,* 186 B.R. 484, 488 (9th Cir. BAP 1995). A bankruptcy court's conclusions of law are reviewed de novo. *In re United States Trustee,* 32 F.3d 1370, 1372 (9th Cir.1994). Whether a security agreement exists is a question of fact. *In re CFLC, Inc.,* 209 B.R. 508, 513 n. 8 (citing *Kreiger v. Hartig,* 11 Wash.App. 898, 527 P.2d 483, 486 (1974)).

## DISCUSSION

■ The Panel has jurisdiction to hear appeals from final orders of the bankruptcy court. 28 U.S.C. 158(a) and (b)(1). "An order approving a compromise ... is final because it finally determines the rights of the parties. An order disapproving a compromise, however, is not final. It determines no rights and settles no issues. It merely leaves the question open for future adjudication." *In re Merle's Inc.,* 481 F.2d 1016, 1018 (9th Cir.1973). *See also In re Tidewater Group, Inc.,* 734 F.2d 794, 796 (11th Cir. 1984)("[A] bankruptcy court order denying approval of [a] settlement agreement [is] not a final order ... [because it does] not resolve the litigation, decide the merits, determine rights of the parties, settle liability, or establish damages.") Thus, an appeal of the denial of the motion to compromise is interlocutory.

If the bankruptcy court had simply denied the motion to approve the compromise, it would be appropriate to dismiss the appeal as interlocutory. However, the court did more by invalidating Expeditors' lien and ordering the turnover of the property. Invalidating the lien is a final order. Thus, the

Panel examines whether the trial court erred when it invalidated the lien. We ratify the appropriateness of this appeal by granting leave to appeal.

## I. Invalidation of the lien

■ Bankruptcy Rule 7001 (formerly rule 701) requires a bankruptcy trustee to initiate adversary proceedings to "determine the validity, priority, or extent of a lien or other interest in property." Fed.R.Bankr.P. 7001. In an analogous case, under former Rule 701, the Ninth Circuit Court of Appeals found that a lien may be avoided only if the trustee has filed an adversary proceeding. *In re Commercial Western Fin. Corp.,* 761 F.2d 1329, 1336 (9th Cir.1985). The Fourth Circuit Court of Appeals has also determined that a debtor may not extinguish or modify a lien during the bankruptcy process unless the debtor takes an affirmative action:

> Unless the debtor takes appropriate affirmative action to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation. The simple expedient of passing their residence through the bankruptcy estate could not vest in the [debtors] a greater interest in the residence than they enjoyed prior to filing their Chapter 13 petition.
>
> .... Bankruptcy Rule 7001(2) expressly requires initiation of an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property," with one exception not applicable here. The procedural requirements of such an action, which include, inter alia, the filing of a complaint and service of a summons, are set out in the Bankruptcy Rules.

*Cen–Pen Corp. v. Hanson,* 58 F.3d 89, 92–93 (4th Cir.1995); *See also In re Golden Plan of Cal., Inc.,* 829 F.2d 705, 711–12 (9th Cir. 1987). An adversary proceeding is the only avenue available to invalidate Expeditors' lien.

■ The use of an adversary proceeding to determine the validity of a lien affords due process to the parties involved. In *In re Golden Plan of Cal., Inc.,* 829 F.2d 705, 711–12, the district court sua sponte determined

that certain transfers were fraudulent conveyances. The court of appeals determined that the

district court's sua sponte consideration of the fraudulent conveyance issue also rendered the proceedings procedurally defective, because the investors were denied adequate notice. The trustee's pleadings contained no allegations that the advances were fraudulent conveyances.... The investors were therefore denied adequate notice and opportunity to prepare a proper defense.

*Golden Plan*, 829 F.2d at 712 (citation omitted). The same due process concerns apply to a bankruptcy court's sua sponte invalidation of a lien.

■ Since the motion to compromise was uncontested, Expeditors was not prepared to appear at the hearing on the motion to compromise. Expeditors did not receive adequate notice that the validity of its lien would be adjudicated nor opportunity to prepare a proper defense of the validity of its lien. The bankruptcy court should not have invalidated the asserted lien without giving Expeditors an opportunity to present a complete argument as to its validity. Furthermore, the bankruptcy court did not follow the procedures necessary to invalidate a lien. No adversary proceeding occurred as required by Rule 7001. Consequently, the bankruptcy court's conclusion invalidating Expeditors' lien is void.

## II. Denial of the motion to compromise

■ "The law favors compromise and not litigation for its own sake, and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise the court's decision must be affirmed." *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986) (citations omitted).

In determining the fairness, reasonableness and adequacy of a proposed settlement agreement the court must consider: (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay

necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the [property].

*In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir.1986) (citations omitted). The bankruptcy court here did not specifically address these factors; rather it appears the court determined that Expeditors could not succeed on the merits.

## 1. Probability of Success in the Litigation

Colortran objected to Expeditors' lien against the light filters. The issue of litigation would have been the validity of Expeditors' lien. Expeditors claims it has a general lien on Colortran's property via a signed credit agreement between Colortran and Expeditors.

■ For bankruptcy purposes, a lien is a "charge against or interest in property to secure payment of a debt or performance of an obligation." § 101(37). In terms of the commercial code, a security interest is a subset of liens. The California Uniform Commercial Code (Cal.Com.Code, §§ 9101—9508) defines security interest as "an interest in personal property or fixtures which secures payment or performance of an obligation." Cal.Com.Code § 1201(37)(a) (West Supp. 1997). As a general rule, there must be sufficient evidence of the creation of a security interest in the goods possessed, typically by evidence of written or oral agreement. J. WHITE & R. Summers, Uniform Commercial Code § 22–3 at 965 (3d ed.1988).

■ In this case, Colortran and Expeditors have an agreement as expressed in by the terms of the credit application. The agreement grants Expeditors an interest in Colortran's property in Expeditors' possession to the extent that Colortran has incurred a debt to Expeditors for its shipping services. As such, Expeditors has a security interest in Colortran's property which is in Expeditors' possession.

The existence of the credit agreement distinguishes this case from *In re CFLC, Inc.*, 209 B.R. 508 (9th Cir. BAP 1997), in which Expeditors asserted a lien based only on

invoices. The BAP determined that the invoices did not provide "evidence of express agreement by [the debtor] to the general lien terms" and affirmed the bankruptcy court's determination that Expeditors did not have a lien. *CFLC*, 209 B.R. at 515. Here, the credit agreement is evidence of an express agreement between Colortran and Expeditors in which Colortran granted a security interest to Expeditors.

■ California Commercial Code § 9203 specifies the requisites for enforceability of a security interest, in pertinent part, as follows:

> ...[A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless all of the following are applicable: (a) The collateral is in the possession of the secured party pursuant to agreement, ... or the debtor has signed a security agreement which contains a description of the collateral .... (b) Value has. been given. (c) The debtor has rights in the collateral.

Cal.Com.Code § 9203(1) (West Supp.1997). The coalescence of all three elements is called "attachment" and signifies the moment when the security interest becomes enforceable. Cal.Com.Code § 9203(2) (West Supp. 1997). Any of the options under (a) will satisfy the first element.

In this case, Expeditors was in possession of the light filters according to an agreement with Colortran that Expeditors ship the property from the United Kingdom to the United States. This alone would satisfy the first element of the analysis.

■ However, another option is to have the right kind of security agreement. An agreement which creates or provides for a security interest is a "security agreement." Cal.Com.Code § 9105(1)(*1*) (West Supp. 1997). The term "security agreement" should be defined broadly. *In re County of Orange*, 179 B.R. 185, 193 (Bankr.C.D.Cal. 1995). "No magic words or precise forms are necessary to create or provide for a security interest so long as the minimum formal requirements of the [Commercial] Code are met." *In re Amex–Protein Dev.*

*Corp.*, 504 F.2d 1056, 1058–59 (9th Cir.1974). "...[T]here must be a binding security agreement in order to make the security interest enforceable." *Komas v. Future Systems, Inc.*, 71 Cal.App.3d 809, 139 Cal.Rptr. 669, 670 (1977), as amended. The agreement must describe the property in which the debtor has conveyed a security interest to the creditor. *In re Robert Bogetti & Sons*, 162 B.R. 289, 295 (Bankr.E.D.Cal.1993).

The agreement between Colortran and Expeditors says that Expeditors shall have a lien on Colortran's property. The agreement was signed by Colortran's representative making the agreement binding on Colortran and it describes the collateral as that property in Expeditors' possession, custody or control. The agreement between Colortran and Expeditors is sufficient to satisfy the first element of the attachment analysis.

The second element of attachment is giving value.

> "...[A] person gives 'value' for rights if he acquires them (a) in return for a binding commitment to extend or for the extension of immediately available credit whether drawn upon and whether or not a chargeback is provided for in the event of difficulties in collection; or (b) As security for or in total or partial satisfaction of a preexisting claim; or ... (d) Generally, in return for any consideration sufficient to support a simple contract."

Cal.Com.Code § 1201(44).

Expeditors either gave value at the time of the agreement or at the time Expeditors asserted its lien in the light filters. If at the time of the agreement, Expeditors gave value by acquiring a security interest in Colortran's property in return for Expeditors' binding agreement to extend credit to Colortran. If at the time Expeditors asserted its lien, Expeditors gave value by acquiring rights in Colortran's property as security for a preexisting claim, the balance on Colortran's account.

■ Finally, attachment requires that the debtor have rights in the collateral. The debtor can only grant a property interest to a third party to the extent of his own interest in the property. "...[T]itle passes to the

buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods ... (a) If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at a destination, title passes to the buyer at the time and place of shipment ..." Cal.Com. Code § 2401(2)(a).

When Colortran's supplier gave Expeditors possession of the light filters for shipment, title passed to Colortran. At that moment, Colortran had rights in the light filters.

When all three elements existed simultaneously, Expeditors' security interest attached and became enforceable. Because the security interest was enforceable, the lien Expeditors asserts is valid. Consequently, Expeditors would likely have been successful litigating the validity of its lien on Colortran's light filters.

### 2. Other Factors for Reasonableness of the Motion to Compromise

As mentioned above, the bankruptcy court did not specifically consider the *A & C Properties* factors. The record indicates, however, that the lien invalidation was the basis for the denial of the uncontested compromise.

### CONCLUSION

The bankruptcy court did not provide Expeditors the proper procedural safeguards before avoiding its lien. Nor did the bankruptcy court follow the procedures required by Rule 7001 to invalidate a lien. The bankruptcy court's order invalidating Expeditors' lien and denying the compromise is REVERSED and REMANDED to the bankruptcy court for further appropriate proceedings.