### In re CHEQNET SYSTEMS, INC.

**M. Randy RICE, Trustee, Plaintiff,**

**v.**

**CITIZENS FIRST BANK OF FORDYCE and Susan Montgomery and all members of the pending class, Defendants.**

Bankruptcy No. 97–40464 S.
Adversary No. 98–4019.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Oct. 2, 1998.

---

M. Randy Rice, Little Rock, AR, for Plaintiff or Petitioner.

A.J. Kelly and Lance Miller, Little Rock, AR, for Defendant or Respondent.

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon a motion for summary judgment filed by Citizens First Bank of Fordyce on July 7, 1998. Prior to filing a chapter 7 case, the debtor was in the business of check collection. The debtor contracted with merchants to pursue

recovery of returned and uncollected checks and remit a portion of the recovery to the merchants. On June 18, 1993, and again on July 24, 1994, the debtor signed promissory notes in favor of Citizens Bank of Fordyce ("the bank").[1] The note granted the bank "a...security interest in the property described in the documents executed in connection with the note as well as other property designated as security for the loan now or in the future. Assignment of Contract with Walmart Stores, Inc., and Second Mortgage on Commercial Building More Particularly Described on Mortgage Dated 6–18–93." Other documents, including the mortgage but not including the financing statement referenced in the motion for summary judgment, were executed with the notes. It was not until nearly three years after the first note was signed that the debtor and the bank executed and filed a UCC–1 financing statement listing other collateral. The financing statements were filed with the Secretary of State on April 9, 1996, and with the Pulaski County Circuit Clerk on April 10, 1996.

On January 31, 1997, the debtor filed a case under chapter 7 of the Bankruptcy Code. On February 12, 1998, the trustee filed this adversary proceeding alleging that the bank does not enjoy a perfected security interest in property of the estate because the security documents do not properly reference the collateral. The bank moves for summary judgment, Fed. R. Bankr.P. 7056, on the grounds that, as a matter of law, it holds a perfected security interest in accounts and contract rights of the debtor as of the date of the filing of the petition.

■ While federal bankruptcy law determines the effect of legal or equitable interests in property, *N.S. Garrott & Sons v. Union Planters National Bank (In re N.S. Garrott & Sons )*, 772 F.2d 462, 466 (8th Cir.1985), the Court looks to state law to determine the nature and extent of the interest, *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re N.S. Garrott & Sons*, 772 F.2d at 466.

Under Arkansas law, in order to have a perfected security interest, the secured party must demonstrate that (1) the debtor has rights in the collateral; (2) the debtor signs a security agreement in favor of the secured party which contains a description of the collateral; (3) value is given by the secured party to the debtor; and (4) a valid financing statement is properly recorded. Ark.Code Ann. § 4–9–203 (Michie Supp.1997); *In re Hot Shots Burgers & Fries, Inc.*, 169 B.R. 920 (Bankr.E.D.Ark.1994). In the instant case, the parties do not dispute the first, third and fourth elements. Rather, the parties dispute whether there is a valid security agreement containing a description of the property in which the bank claims to be secured. The bank argues on alternative grounds that the note constitutes a security agreement, that the financing statement constitutes a security agreement, and that, under the composite document rule, the note and financing statement taken together constitute a security agreement.

■ The Arkansas Code defines a security agreement as an agreement which creates or provides for a security interest. Ark.Code Ann. § 4–9–203(1) (Mitchie Supp.1997). Whether a security interest exists is generally considered to be a question of fact, *Gibson Co. Farm Bureau Cooperative Assoc. v. Greer*, 643 N.E.2d 313, 319, 320 (Ind.1994), because it is the intent of the parties that determines the existence and nature of a security interest.

### The Note as Security Agreement

■ The bank first argues that the note itself constitutes a security agreement such that it is perfected in the debtor's property. The note may constitute a security agreement because it grants a security interest, contains a description of the collateral, and is signed by the debtor. However, if the note is the security agreement, the bank's security is that collateral described in the agreement—the note. Neither the composite document rule nor the parole evidence rule apply to expand the items of collateral securing the note or to correct any error in the granting language of the security agreement. *In re Kevin W. Emerick Farms, Inc.*, 201 B.R. 790 (Bankr.C.D.Ill.1996). If the note is the

---

**1.** Two other notes were also signed by the debtor granting security interests.

security agreement, the financing statement, a mere notice document, does not serve to extend the bank's rights to other collateral. *See id.; cf. General Electric Credit Corp. v. Bankers Commercial Corp.*, 244 Ark. 984, 429 S.W.2d 60 (Ark.1968)(describing notice nature of financing statement). In light of the discussion below, the Court can not rule as a matter of law that the bank is limited in its security interest to the collateral described in the note, but it also cannot grant the motion for summary judgment to the extent the bank asserts it is secured by collateral not specifically listed in the note.

### The Financing Statement as Security Agreement

■ The bank also argues that the financing agreement constitutes a security agreement. Although there is some limited authority in other jurisdictions, *see, e.g., In re Amex–Protein Development Corp.*, 504 F.2d 1056 (9th Cir.1974), the majority of jurisdictions, including Arkansas, hold to the rule that a financing statement, standing alone, does not create a security interest in the debtor's property. *General Electric Credit Corp. v. Bankers Commercial Corp.*, 244 Ark. 984, 429 S.W.2d 60 (Ark.1968). *Accord Gibson v. Resolution Trust Corporation*, 51 F.3d 1016, 1022 (11th Cir.1995); *In re Colortran, Inc.*, 218 B.R. 507, 35 U.C.C. Rep. Serv.2d 300 (9th Cir. BAP 1997); *In re Center Auto Parts*, 6 U.C.C. Rep. Serv. 398 (C.D.Cal.1968). Accordingly, the motion for summary judgment is denied to the extent the bank asserts that the financing statement constitutes a security agreement.

### The Composite Document Rule

■ Finally, the bank asserts that the composite document rule applies to create a perfected security interest in all of the collateral described in all the documents. The composite document rule provides that there need not be a separate document labeled "security agreement," but that all relevant loan documents may be examined to determine whether a security agreement exists and what collateral is covered. *Id.; Hoffman v. Schlegel (In re S.O.M.B., Inc.)*, 1995 WL 542512, 28 U.C.C. Rep. Serv.2d 363

(Bankr.D.Conn. Aug. 21, 1995). The documents need not contain any particular words, but there must be language in the instrument(s) that lead to the conclusion that the parties intended that a security interest be created. *In re Ace Lumber Supply, Inc.*, 105 B.R. 964 (Bankr.D.Mont.1989). That is, the language must meet the requirements of U.C.C. § 9–203 and objectively indicate that the parties intend to create a security interest. *Id.* Thus, in applying the composite document rule, the court looks to the transaction as a whole to determine if there are writings signed by the debtor which describe the collateral and which demonstrate an intent to create a security interest in particular collateral. *In re Bollinger Corp.*, 614 F.2d 924, 928 (3d Cir.1980).

■ Although there does not appear to be any case authority in Arkansas as to whether the composite document rule exists under Arkansas law, the majority of jurisdictions apply such a rule. *Maddox v. FDIC (In re Maddox)*, 92 B.R. 707 (Bankr.W.D.Tex. 1988); *Gibson Co. Farm Bureau Cooperative Assoc. v. Greer*, 643 N.E.2d 313, 319 (Ind. 1994). The Court believes that the Arkansas courts would apply such a rule, which would not only be consistent with the extensive authority in other jurisdictions but would also comport with the policies and language of the Uniform Commercial Code, codified in the Arkansas Statutes under title 4, subtitle 1.

■ Although the Court believes that the composite document rule may be applied under Arkansas law, summary judgment based upon an application of the rule to the facts of this case is inappropriate. The trustee has raised numerous issues which preclude summary judgment, including, but not limited to, the question of what documents were executed "in conjunction with the July 28, 1994, note," and more specifically, what collateral the parties intended would secure the note. Vagueness in the affidavits of the debtor's principals raises concern and highlights the need for an opportunity for cross-examination. Even the authority ardently asserted by the bank indicates that the contemporaneous nature of the execution of the documents may be a factor in the application of the

composite document rule. *See In re Center Auto Parts*, 1968 WL 9209, 6 U.C.C. Rep. Rep. Serv. 398 (1968). Inasmuch as documents other than the financing statement were signed contemporaneously with the first note, the fact that the financing statement was so belatedly filed is not only relevant but it raises questions as to which other documents constitute the security agreement and what collateral secures the debt. Accordingly, it is

**ORDERED** that the motion for summary judgment filed by Citizens First Bank of Fordyce on July 7, 1998, is Denied.

**IT IS SO ORDERED.**