FILED

AUG 01 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   EW-11-1538-MkHJu |
| | ) | |
| JAMES JAHR and CHANELLE JAHR, | ) | Bk. No.   11-02302 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| JAMES JAHR; CHANELLE JAHR, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| DONALD R. FRANK, dba Don's | ) | |
| Auto Sales, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued by Telephone Conference
and Submitted on June 14, 2012

Filed: August 1, 2012

Appeal From The United States Bankruptcy Court
for the Eastern District of Washington

Honorable Frank L. Kurtz, Chief Bankruptcy Judge, Presiding

_____

Appearances:   Thomas D. Nagle of the Law Offices of Thomas D. Nagle argued on behalf of Appellants James Jahr and Chanelle Jahr; and James P. Hurley of Hurley & Lara argued on behalf of Appellee Donald Frank, dba Don's Auto Sales.

_____

Before:   MARKELL, HOLLOWELL and JURY, Bankruptcy Judges.

_____

   [*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Chapter 13[1] debtors James Jahr ("Jahr") and his wife Chanelle Jahr (jointly, the "Jahrs") filed a motion for contempt against Donald R. Frank ("Frank") for an alleged violation of the automatic stay. Frank defended on the basis that the property involved was not estate property and hence was not protected by the automatic stay. Over the Jahrs' objection, the bankruptcy court accepted Frank's argument, and determined that Frank had not violated the automatic stay. The bankruptcy court thus did not hold Frank in contempt or sanction him.

We VACATE and REMAND, with instructions to the bankruptcy court to enter an order dismissing the contempt motion without prejudice to the Jahrs commencing an adversary proceeding seeking the same relief or, alternatively, seeking relief under § 362(k).

**FACTS**

Doing business as Don's Auto Sales, Frank owned and operated a used car dealership in Union Gap, Washington. On April 18, 2011, Jahr and Frank both signed a retail installment contract ("Contract") under which Frank sold Jahr a 2002 Cadillac Escalade ("Escalade").[2] The purchase price was $14,773.75; with other

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All Civil Rule references are to the Federal Rules of Civil Procedure.

[2]Chanelle Jahr was not a party to the Contract, and it is undisputed that Chanelle Jahr was not directly involved in the sales transaction between Jahr and Frank. Nonetheless, for ease of reference, we hereinafter refer to the Jahrs jointly, except when discussing Jahr's individual testimony at the contempt
(continued...)

2

charges allocated to the Jahrs, however, the total price came to $15,000. The Jahrs paid $7,000 down. Frank agreed to carry the balance over time at 29.99%, taking back a security interest in the vehicle to secure the unpaid balance.

On the face of the Contract, the sale was unconditional. On the day of purchase, April 18, or the next day, Frank delivered possession of the Escalade to the Jahrs, and the Jahrs drove it off Frank's lot. The Jahrs obtained insurance for the Escalade soon thereafter.

About 2-1/2 weeks later, on May 6, Frank repossessed the Escalade, after presumably declaring a default under the Contract because Frank had deemed himself "insecure." Three days later, on May 9, 2011, the Jahrs filed a chapter 13 bankruptcy case.[3] On May 23, 2011, the Jahrs filed a motion to hold Frank in contempt of court for willful violation of the automatic stay based on his repossession of the Escalade and his refusal to return it to the Jahrs.[4]

---

[2](...continued)
motion hearing. Joint reference to the Jahrs in all other instances does not affect our analysis or disposition of this appeal.

[3]This was the Jahrs' third bankruptcy in five years. They filed their first chapter 13 bankruptcy in May 2007 (Case No. 07-01720), which case was dismissed in July 2008, based on the Jahrs' failure to make their chapter 13 payments. The Jahrs filed their second chapter 13 bankruptcy in June 2009 (Case No. 09-03180), which case was dismissed in October 2009, also based on the Jahrs' failure to make their chapter 13 payments.

[4]We are somewhat perplexed by the Jahrs' decision to commence a contempt proceeding instead of commencing a proceeding to recover damages under § 362(k)(1). Section 362(k) provides:
(continued...)

3

Initially, the Jahrs filed a certificate under penalty of perjury stating that the Escalade was repossessed after they filed bankruptcy. But later, in June 2011, the Jahrs filed a new certificate under penalty of perjury, in which they admitted that the first certificate was inaccurate, that the Escalade actually was repossessed on May 6, 2011, three days before the Jahrs filed their bankruptcy case.[5]

Based on the Jahrs' motion, on June 1, 2011, the court entered an order to show cause, directing Frank to appear and

---

[4](...continued)
"Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Contempt proceedings and § 362(k) proceedings are distinct. Different standards and remedies apply to each. See Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1190 (9th Cir. 2003). Moreover, while it generally is accepted in the Ninth Circuit that contempt is a proper remedy for violation of the stay when the contempt proceeding is pursued by an entity who is ineligible for relief under § 362(k), id. at 1189-90, it is far less clear whether an individual who is eligible for relief under § 362(k) also is eligible to seek alternate relief by way of a contempt proceeding under § 105(a). See generally id. at 1189-90. In light of our disposition of this appeal, we do not need to resolve this issue.

[5]The Jahrs included in their excerpts of record for this appeal the Jahrs' first, inaccurate certificate, but they did not include the later, accurate certificate. Nonetheless, we can and have considered this later certificate, as well as other documents filed in the Jahrs' bankruptcy case, even though they were not provided to us by either of the parties. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mrtg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003). We have obtained copies of those documents online by accessing the bankruptcy court's electronic docket and the images appended thereto.

4

show cause why he should not be held in contempt of court for violation of the automatic stay. After both parties filed briefs in support of their respective positions, the bankruptcy court held an evidentiary hearing on July 14 and 15, 2011.[6]

During the hearing, Frank admitted that, prepetition, Frank had repossessed the Escalade and that, postpetition, he had refused to return the Escalade to the Jahrs. However, Frank asserted that he was entitled under the Contract to declare himself insecure and repossess and retain the Escalade based on certain inaccuracies and omissions in the information – including whether James Jahr had a valid driver's license – that the Jahrs had provided to Frank in order to induce Frank to sell them the Escalade.

Somewhat inconsistently, Frank also asserted that the whole sales transaction was conditioned upon whether Frank was able to sell the Contract to Reliable Credit Association ("Reliable"). Both before and after transferring possession of the Escalade to the Jahrs, Frank worked with Reliable hoping that Reliable would finance the sale in exchange for an assignment of Frank's rights under the Contract. Frank testified that Frank's customers, including the Jahrs, were routinely and repeatedly told that all deals were contingent on financing company approval.

According to Frank: (1) Reliable had approved the financing for the sale to the Jahrs, but subject to certain stipulations,

[6]Because the Jahrs' excerpts of record only included limited excerpts from the hearing transcript, we instead have relied upon the full hearing transcript. That full transcript is appended to the bankruptcy court's electronic docket as document numbers 106 and 107, in case number 11-02302.

5

like proof of a valid driver's license, proof of residency, proof of income, and the accuracy of the information that the Jahrs had provided to Frank; and (2) Frank communicated Reliable's stipulations to the Jahrs and told the Jahrs that the deal was conditioned upon the satisfaction of Reliable's stipulations.

The following passage is representative of Frank's testimony:

Q. . . . So [the Contract, Ex. 107,] was the agreement between you and James Jahr?

A. If, if, a big if, if the stipulations meet.

Q. Where does it say that?

A. We tell him that. I know verbal contracts aren't any good, but he has to know that if my collateral is in jeopardy, that I can repossess it. And with his stipulations not meeting and me not getting my money, my collateral is in jeopardy.

Hr'g Trans. (July 14, 2011) at 93:13-21.

For his part, Jahr testified that Frank's staff told him the sale was unconditional and informed him the day he took possession of the Escalade: (1) that Reliable had agreed to finance the transaction and (2) they appreciated him buying the car. The Jahrs also claimed that the Contract, which was unconditional on its face, was controlling.

The Jahrs further argued that, to the extent Frank challenged their claim that their bankruptcy estate had an interest in the Escalade, Frank should have commenced an adversary proceeding raising the issue. According to the Jahrs, by not commencing such an adversary proceeding, Frank in essence had waived, for purposes of the contempt motion, his right to challenge the Jahrs' claim that the estate had an interest in the

6

Escalade.

Immediately following the close of evidence, the bankruptcy court expressed its preliminary view that, notwithstanding Frank's prepetition repossession of the Escalade, the Jahrs continued to have an ownership interest in the Escalade because Frank had sold the Escalade to the Jahrs:

> You know, the bankruptcy estate covers all property in which the debtor has an interest.
>
> Now, in this situation, which is very murky, you know, you've got a contract, the contract has been signed, [Frank] accepted [a downpayment of] $7000, [Frank] sent the young man off at the dealership with the vehicle, so he's got an interest in that piece of property. And so there is a question about whether you violated the automatic stay by retaining possession of property of the estate in a dispute over a debt.

Hr'g Trans. (July 15, 2011) at 120:11-20.

However, by the time the bankruptcy court rendered its oral findings of fact and conclusions of law on September 6, 2011, the court's thinking had evolved. The court, once again, acknowledged: (1) that both parties had signed the Contract, which was unconditional on its face; (2) that the Jahrs paid to Frank a $7,000 downpayment, which never was returned to him; and (3) that Frank transferred to the Jahrs possession of the Escalade, which transfer occurred on April 18 or 19, 2011. Nonetheless, according to the court, the Jahrs and Frank had agreed that Reliable's purchase of the Contract was a condition precedent to Frank's duty to sell the Escalade to the Jahrs. The court based this determination largely on Frank's testimony regarding the oral statements and course of conduct of the parties while they were negotiating the sale of the Escalade. The court further reasoned that, because Frank's duty to sell was

7

conditional and because Frank had repossessed the Escalade prepetition, the Jahrs had no interest in the Escalade at the time of his bankruptcy filing, so it was not property of the estate. This led the court to conclude that Frank's postpetition refusal to return the Escalade to the Jahrs had not violated the automatic stay because the Escalade was not estate property.

On September 21, 2011, the bankruptcy court entered its order determining that Frank had not violated the automatic stay and hence that Frank should not be held in contempt of court. The Jahrs timely filed their notice of appeal on September 27, 2011.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), and we have jurisdiction under 28 U.S.C. § 158(a)(1).

**DISCUSSION**

The dispositive issue in this appeal is procedural: whether the bankruptcy court erred in ruling on the merits of the Jahrs' contempt motion in the absence of an adversary proceeding. This issue requires us to interpret and apply Rule 7001(2), which is a matter for de novo review. See Ruvacalba v. Munoz (In re Munoz), 287 B.R. 546, 550 (9th Cir. BAP 2002); see also All Points Capital Corp. v. Meyer (In re Meyer), 373 B.R. 84, 88 (9th Cir. BAP 2007) (interpreting and applying Civil Rule 55(b)(2)).

**A. Law generally governing the Jahrs' contempt motion**

As a threshold matter, we must survey the legal context in which the above-referenced procedural issue arises before we can properly apply the governing procedural rule. As discussed

8

above, this appeal arises from the Jahrs' contempt motion. As the movants seeking an order finding Frank in contempt, the Jahrs bore the burden of proof to establish by clear and convincing evidence that Frank violated a "specific and definite court order." In re Dyer, 322 F.3d at 1190-91. For purposes of contempt, the automatic stay provided for in § 362(a) "qualifies as a specific and definite court order." Id. at 1191.

The Jahrs claimed that Frank had violated § 362(a)(3), which stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Congress added the "exercise control" clause to § 362(a)(3) in 1984, and the Ninth Circuit has held that the mere knowing retention of estate property violates § 362(a)(3). Cal. Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147, 1151 (9th Cir. 1996). Moreover, this Panel has held that the mere failure to return a repossessed motor vehicle that qualifies as property of the estate violates § 362(a)(3). Abrams v. Sw. Leasing & Rental Inc. (In re Abrams), 127 B.R. 239, 241-43 (9th Cir. BAP 1991).

Put another way, if the Escalade was estate property, the onus was on Frank, if he wanted to avoid violating the automatic stay, to return the Escalade as soon as the Jahrs notified Frank of their bankruptcy filing and requested return of the car. See Thompson v. General Motors Acceptance Corp., LLC, 566 F.3d 699, 707-08 (7th Cir. 2009); see also U.S. v. Whiting Pools, Inc., 462 U.S. 198, 206-07, 103 S.Ct. 2309, 2314-15 (1983); Expeditors Int'l of Wash., Inc. v. Colortran, Inc. (In re Colortran, Inc.), 210 B.R. 823, 827-28 (9th Cir. BAP 1997), aff'd in part and

9

*vacated in part on other grounds*, 165 F.3d 35 (table) (9th Cir. 1998).

But the bankruptcy court determined that the Escalade was not property of the estate and thus there was no violation of § 362(a)(3). Whether the Jahrs' bankruptcy estate had an interest in the Escalade is determined by looking at the debtor's legal and equitable property rights on the date of the bankruptcy filing, as established under state law. See *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329, 113 S.Ct. 2106, 2110 (1993); *Cogliano v. Anderson (In re Cogliano)*, 355 B.R. 792, 800-01 (9th Cir. BAP 2006) (citing *Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).

**B.   Adversary proceeding requirement**

On appeal, the Jahrs challenge the bankruptcy court's determination that the Escalade was not property of the estate. Among other things, the Jahrs have asserted that the bankruptcy court should have determined whether the Escalade was estate property in an adversary proceeding under Rules 7001, et. seq., rather than in a contested matter under Rule 9014. This Panel previously has explained that there are significant differences between contested matter procedure and adversary proceeding procedure, *Ung v. Boni (In re Boni)*, 240 B.R. 381, (9th Cir. BAP 1999), and that it is error for a bankruptcy court to employ contested matter procedure when adversary proceeding procedure is required. *In re Munoz*, 287 B.R. at 551 (citing *Bear v. Coben (In re Golden Plan)*, 829 F.2d 705, 711-12 (9th Cir. 1986), *GMAC Mortg. Corp. v. Salisbury (In re Loloee)*, 241 B.R. 655, 660 (9th Cir. BAP 1999), and *In re Boni*, 240 B.R. at 385-86).

10

Under Rule 7001(2), "a proceeding to determine the validity, priority, or extent of a lien or other interest in property," must be brought as an adversary proceeding. And it is settled law in this circuit that it is error for a bankruptcy court to determine property interests outside of an adversary proceeding. See, e.g., Brady v. Commercial W. Fin. Corp. (In re Commercial W. Fin. Corp.), 761 F.2d 1329, 1336-38 (9th Cir. 1985) (reversing order confirming chapter 11 plan because plan proponent attempted to invalidate liens through plan confirmation process, rather than by filing required adversary proceeding); Expeditors Int'l of Wash., Inc. v. Citicorp N. Am., Inc. (In re Colortran, Inc.), 218 B.R. 507, 510-11 (9th Cir. BAP 1997) (following Commercial W. Fin. Corp, and declaring void bankruptcy court's order denying compromise motion to the extent the order purported to invalidate creditor's lien). Moreover, this Panel specifically has held that the issue of whether the estate has an interest in particular property ordinarily should be determined in an adversary proceeding. In re Cogliano, 355 B.R. at 804-05.

However, In re Munoz points to one possible loophole in the adversary proceeding requirement that may apply here. If the bankruptcy court's circumvention of the adversary proceeding requirement was harmless, this Panel need not reverse on that basis. In re Munoz, 287 B.R. at 551-52.[7] As Munoz explained:

[7]Another potential loophole that arguably might apply in some cases is the appellant's waiver of the adversary proceeding requirement. In re Boni, 240 B.R. at 385–86. In Boni, we declined to decide whether and under what circumstances the adversary proceeding requirement can be waived. We similarly decline to do so here. In this instance, it suffices for us to
(continued...)

11

> Such an error may nevertheless be harmless when the record of the procedurally incorrect "contested matter" is developed to a sufficient degree that the record of an adversary proceeding likely would not have been materially different. In such circumstances, the error does not affect the substantial rights of the parties and is not inconsistent with substantial justice.
>
> But where the record might have been materially different with an adversary proceeding, reversal ensues.

Id. at 551 (citations omitted.) In concluding that the failure to use an adversary proceeding there was harmless error, Munoz relied on the following considerations: (1) the material facts were few and undisputed, (2) the dispositive issues were pure questions of law, (3) neither party expressed any discontent with the contested matter procedures the bankruptcy court utilized, and (4) this Panel was "satisfied that neither the factual record nor the quality of the presentation of the arguments would have been materially different had there been an adversary proceeding." Id.

Here, in contrast, the Munoz factors militate in favor of reversal. We will address each factor in turn.

**1. The dispositive facts were disputed, and the testimony concerning those facts was inconsistent.**

While the material facts were relatively few, the dispositive facts concerning whether Frank transferred title to the Escalade to the Jahrs were disputed and the evidence on this

---

[7](...continued)
hold that there could not have been any waiver when the Jahrs argued, both in the bankruptcy court and on appeal, that the bankruptcy court should not decide the issue of the estate's interest in the Escalade outside of an adversary proceeding.

12

point was quite equivocal. For their part, the Jahrs claimed that there were no unsatisfied contingencies with respect to either Contract acceptance or the consummation of the sale. On the other hand, Frank's testimony was inconsistent. At times, he seemed to admit that the sale had been consummated without mentioning any qualifications or conditions. At other times, Frank stated that the "sale" or the "deal" was contingent upon the satisfaction of the financing condition and other conditions.[8] The inconsistency of Frank's testimony is highlighted by his admission that he accepted the benefits of the Contract (particularly the $7,000 downpayment and the right to repossess if he deemed himself insecure), while at the same time denying that the Contract conferred upon the Jahrs any interest in the Escalade or any other rights. This inconsistency is particularly problematic here because Frank's retention of Contract rights for himself was coupled with delivery of possession of the Escalade to the Jahrs.[9]

---

[8]It is unclear to us whether Frank's references to "sale" and "deal" in this context were meant to refer to Frank's acceptance of the Contract, Frank's duty to perform under the Contract, Frank's consummation of the sale by transferring title to Jahr, or all three of the above. Indeed, from our review of the entire record, we suspect that Frank conflated these three questions – that he did not comprehend that the answer to each of these three questions could be different and that each answer could have distinct legal consequences.

[9]Frank's inconsistent testimony also is problematic because Washington law generally prohibits automobile dealers from holding buyers to a sales contract while at the same time giving themselves the option, for more than a few days, to declare that there is no binding contract between the parties. See RCW § 46.70.180(4)(a); see also Banuelos v. TSA Wash., Inc.,

(continued...)

13

**2. The dispositive issue was not a pure question of law.**

Not only were there material issues of disputed fact in play, but also the underlying issue – whether the Escalade was estate property at the time of the Jahrs' bankruptcy filing – cannot reasonably be characterized as a "pure question of law" as was extant in Munoz. To the contrary, answering this question required the bankruptcy court to weigh the conflicting and circumstantial evidence regarding whether the parties explicitly agreed that Frank would retain all interest in and title to the Escalade notwithstanding the fully-executed Contract and Frank's delivery of possession to the Jahrs. The bankruptcy court never found that such an agreement existed.[10]

**3. The Jahrs objected to the bankruptcy court resolving the matter absent an adversary proceeding.**

Unlike the parties in Munoz, the Jahrs here more than once objected to the issue of the estate's interest in the Escalade being decided outside of an adversary proceeding. After Frank raised the issue of whether the Escalade was estate property, the

---

[9](...continued)
141 P.3d 652, 655 (Wash. App. 2006).

[10]Under Washington's version of the Uniform Commercial Code covering sales, RCW §§ 62A.2-101, et seq., absent explicit agreement to the contrary: (1) identification of the Escalade in the Contract conferred upon the Jahrs a legally-recognized interest in the Escalade, and (2) delivery of possession of the Escalade passed title to the Jahrs (as that is when Frank completed his performance). See RCW §§ 62A.2-401(1), (2); 62A.2-501(1)(a). In other words, unless the bankruptcy court found an explicit agreement to the contrary, the undisputed facts regarding the Contract, Franks' delivery of the Escalade, and the Jahrs' driving it off of Franks' lot would have been sufficient to establish that the Jahrs had an interest in the Escalade that made it estate property at the time of their bankruptcy filing.

14

Jahrs twice explicitly argued that the estate property issue needed to be addressed, if at all, in an adversary proceeding. The Jahrs raised this argument in their written brief in support of their contempt motion and reiterated this argument at the evidentiary hearing on the contempt motion. But nothing in the record indicates that the bankruptcy court addressed this argument.

> **4. The factual record and the quality of the presentation of the arguments likely would have been materially different had there been an adversary proceeding.**

The above discussion of the first three <u>Munoz</u> factors also convinces us that, under the fourth <u>Munoz</u> factor, the development of the factual record and the quality of the parties' presentations of argument, both likely would have benefitted from the more formal and deliberate procedures associated with adversary proceedings.

Jahrs' belated parol evidence argument further convinces us that adversary proceeding procedures might have facilitated the resolution of this dispute. The Jahrs have argued for the first time on appeal that the parol evidence rule should have kept the bankruptcy court from considering evidence concerning the parties' alleged oral agreements inconsistent with the written terms on the face of the Contract. Because the Jahrs did not raise the parol evidence rule in the bankruptcy court, we decline to either address or decide the specific parol evidence issues they raise for the first time on appeal. <u>See</u> <u>Golden v. Chicago Title Ins. Co. (In re Choo)</u>, 273 B.R. 608, 613 (9th Cir. BAP 2002); <u>Branam v. Crowder (In re Branam)</u>, 226 B.R. 45, 55 (9th Cir. BAP 1998), <u>aff'd</u>, 205 F.3d 1350 (table) (9th Cir. 1999).

15

Nonetheless, the lack of development of the record relating to parol evidence issues further suggests that adversary proceeding procedures might have had a salutary impact on this dispute.  Specifically, if the more extensive and formal discovery and pretrial procedures associated with an adversary proceeding had been followed, the parol evidence issues quite likely would have surfaced before trial, and the parties then would have been able to develop the record with the parol evidence rule in mind and to obtain a ruling from the bankruptcy court on the applicability of the rule.

For all of the foregoing reasons, we agree with the Jahrs that the bankruptcy court should not have determined the estate's interest in the Escalade outside of an adversary proceeding, and we hold that the bankruptcy court's circumvention of an adversary proceeding was not harmless error.

**C.  The Jahrs' "arguable estate property" argument**

There is another aspect of the Jahrs' adversary proceeding argument that we must discuss.  The Jahrs in essence contend that Frank waived any argument that the Escalade was not estate property because he did not file an adversary proceeding seeking to determine whether the Escalade was property of the estate.

In support of this contention, the Jahrs rely upon Brown v. Chestnut (In re Chestnut), 422 F.3d 298 (5th Cir. 2005).  But the Jahrs' reliance on Chestnut is misplaced.  Chestnut held that property in which the debtor had an "arguable claim of right" on the petition date (which Chestnut referred to as "arguable property of the estate") was protected by § 362(a)(3) and hence any affirmative actions taken by a nondebtor party to seize,

16

possess or foreclose upon arguable estate property was a violation of the automatic stay.  Id. at 300, 302-03.

Chestnut's holding hinges on its extension of the meaning of "property of the estate" as used in § 362(a)(3) to include "arguable property of the estate" – property in which the debtor arguably might have an interest on the date the bankruptcy case is commenced.  See id. at 302-03.  We decline to follow Chestnut because we are convinced that its expansive reading of the term "property of the estate" is inconsistent with the plain language of that term's statutory definition.  See § 541(a)(1); see also Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir. 1984) (stating that property of the estate under § 541(a) consists of the debtor's property rights as of the date of the bankruptcy filing – "no more, no less"); Frazer v. Drummond (In re Frazer), 377 B.R. 621, 626–27 (9th Cir. BAP 2007) (same).

In any event, Chestnut also is distinguishable.  Unlike Chestnut, where the action was brought under the predecessor of § 362(k),[11] the Jahrs sought sanctions for alleged contempt of court.  As the party seeking contempt sanctions, the Jahrs were required to prove that Frank violated a "specific and definite court order."  In re Dyer, 322 F.3d at 1190-91.  When the Jahrs contend that § 362(a)(3) covers the Escalade as "arguable estate property," we begin to have trouble perceiving § 362(a)(3) as a "specific and definite court order" on which to ground contempt

_____

[11]As part of Congress's enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005), substantive amendments not relevant to this appeal were made to § 362, and former § 362(h) became § 362(k).

17

sanctions. In other words, the scope of the automatic stay potentially becomes so broad and ill-defined when you start adding "arguable estate property" to its coverage that we no longer feel comfortable characterizing § 362(a)(3) as a "specific and definite court order" for purposes of a contempt proceeding.

In sum, we hold that the Jahrs, not Frank, needed to commence an adversary proceeding if they desired to duly establish their entitlement to contempt sanctions based on Frank's alleged violation of the automatic stay. We acknowledge that contempt sanctions ordinarily can be sought by motion. See Rule 9020 (providing that motions for contempt are governed by Rule 9014 and not Rule 7001); see also In re Del Mission Ltd. 98 F.3d at 1152-53 (stay violation pursued as motion for contempt). However, because the contempt motion here required a determination of whether certain property was property of the estate, it was incumbent on the Jahrs to commence an adversary proceeding before they could recover their requested contempt sanctions.[12]

**CONCLUSION**

For the reasons set forth above, We VACATE the bankruptcy court's ruling on the Jahrs' contempt motion, and we REMAND, with an instruction for the bankruptcy court to enter an order dismissing the contempt motion without prejudice to the Jahrs

---

[12]We further acknowledge that it might seem ironic for the Jahrs to succeed on appeal by arguing that their contempt motion, a matter which they initiated, should have been disposed of by adversary proceeding. But much if not all of that seeming irony disappears when one considers that the issue necessitating an adversary proceeding – the estate property issue – was raised by Frank in his response to the contempt motion.

18

commencing an adversary proceeding seeking the same relief or, alternatively, seeking relief under § 362(k).